## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RANDALL J. STANTON,

      **Plaintiff,**

v.

OFFICER EASTER, ABIGAIL DINN, DANIEL COCKRUM, SHERIFF KYLE BACON, GERRY POOLE, CAPTAIN MARIE HALL, JOHN DOE CORRECTIONAL OFFICER, JANE DOE CORRECTIONAL OFFICER, JANE DOE JILL FROM PRETRIAL SERVICES, OFFICER MICHELLE, JOHN DOE, TIM HALL, and ILLINOIS STATE TROOPER PAYNE,

      **Defendants.**

Case No. 26-cv-62-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Randall J. Stanton, who at the time he filed his original Complaint was a pretrial detainee at the Franklin County Jail, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Stanton subsequently filed a First Amended Complaint (Doc. 14) alleging improper searches and seizures, but the pleading was dismissed for failure to state a claim (Doc. 19). Stanton was granted leave to file an amended pleading. In his Second Amended Complaint (Doc. 21), Stanton alleges a campaign of harassment from various officers of a drug task force in Franklin County, Illinois. He alleges violations of his First, Fourth, Eighth, and Fourteenth Amendment rights.

1

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Second Amended Complaint

On February 2, 2023, Stanton alleges that he and his girlfriend left his house and were immediately pulled over by Trooper Payne (Doc. 21, p. 4). Stanton alleges the stop was directed by Officer Easter as a pretext for officers to obtain his house keys (*Id.*). No contraband was found during the search of his car, but members of a multi-jurisdictional drug task force swarmed the scene and seized Stanton's phone, wallet, and house keys (*Id.*). Easter then drove Stanton's vehicle back to his residence and directed that Stanton's exterior security cameras be destroyed (*Id.* at p. 5). The officers then used the keys to enter Stanton's house based on a warrant that Stanton claims was defective because it included only the address for his home, but failed to list him as the occupant (*Id.*).

Stanton later received discovery materials from Franklin County State's Attorneys Abigail Dinn and Daniel Cockrum, which were falsified and omitted Easter's presence from the search (Doc. 21, p. 5). But Stanton alleges that he possesses security footage from the night that was not destroyed and proves that Easter was present, drove Stanton's vehicle, and ordered the destruction of video evidence (*Id.*). Inside the house, officers

2

demanded access to Stanton's safe, which he alleges he provided "under extreme duress." (*Id*.). Inside, officers located 13 ounces of N-isopropylbenzylamine, a substance Stanton alleges is legal to possess (*Id*.). Stanton accused the officers of framing people with this chemical (*Id*.).

After the search, Stanton was taken to the Franklin County Jail where for seven hours Easter sought to obtain Stanton's cooperation to become a confidential informant (Doc. 21, p. 6). Easter promised to make the case against him go away if he cooperated. Stanton alleges that he agreed, under coercion, and acted as an informant for approximately one week (*Id*.). He then retained counsel and texted Easter, informing him that he would no longer participate as a confidential informant; he directed any future communication to his attorney (*Id*.). Easter allegedly warned Stanton that "if you fuck the task force over, the task force is gonna fuck you over." (*Id*.).

Because Stanton obtained counsel, he alleges that he immediately faced retaliation from Easter and other officers from the task force (Doc. 21, p. 6). Criminal charges were brought against him based on the February 2 search, and Assistant State's Attorneys presented a false narrative of the circumstances surrounding the search to a judge. Cockrum claimed that Stanton was followed from St. Louis and pulled over at the Benton/West City exit, where a K9 unit alerted to his car. A search of the trunk revealed one pound of methamphetamine and fentanyl (*Id*.). Cockrum obtained the testimony from Trooper Hall through leading questions, and Stanton alleges that Hall committed perjury by affirming the false narrative (*Id*.). Stanton alleges that the State's story regarding the surveillance, traffic stop, discovery of drugs, and search of his home was

entirely false (*Id.* at pp. 6-7). Stanton alleges that the presiding judge expressed skepticism regarding some of the charges, but Dinn and Cockrum continued to pursue all of the charges against him (*Id.* at p. 7).

Stanton alleges that during the February 2 stop and search, Easter seized $840.00 from Stanton's wallet (Doc. 21, p. 7). Officials then claimed that a forfeiture hearing occurred on February 17, 2023, but Stanton claims that no such hearing took place and the money was never returned (*Id.*).

Stanton further alleges that after he obtained counsel, officers began harassing him. On May 23, 2023, Officer Michelle of the Christopher Police Department and John Doe Officer from the Zeigler Police Department arrested Stanton on a $300,000 warrant for trafficking drugs (Doc. 21, p. 7). Stanton alleges that arrest stemmed from the fabricated stop on February 2 (*Id.*). During the arrest, the officers shouted that "you fucked the task force over, now the task force is fucking you over." (*Id.*). Between 2023 and 2025, Stanton was subjected to at least five traffic stops. On one occasion, Trooper Hall watched Stanton's car while he was at an establishment and then pulled him over for a dull license plate light. No ticket was issued for the light (*Id.* at p. 8). Every time Stanton was stopped, he was subjected to a K9 unit that alerted on his car, resulting in a destructive search of his vehicle. Each time, Stanton alleges that he was released. Stanton alleges that these actions were part of a policy of harassment committed under the authority of Sheriff Kyle Bacon (*Id.*).

In June 2024, Tim Hall conducted a stop, searched Stanton's car based on a K9 alert, and arrested him for possessing brass knuckles (Doc. 21, p. 8). On September 9,

2025, Easter arrested Stanton for narcotics based on another stop, K9 alert, and search (*Id.*). Stanton accused Easter of planting the drugs, and only Stanton was arrested despite the presence of three additional occupants in the vehicle (*Id.*). On the ride to jail, Easter reminded Stanton that he kept his word about what would happen if he messed with the task force (*Id.*).

After the September 2025 arrest, Stanton alleges that he should have been eligible for pretrial release because of the less serious charges. Instead, Dinn and Cockrum conducted what Stanton labels as a "bond swap." (Doc. 21, p. 8). They returned the bond for his 2023 case in order to ensure that Stanton was not released on the 2025 charges (*Id.*). They held him on the more serious 2023 trafficking charges (*Id.*).

Stanton alleges that he was held at the Franklin County Jail on the charges from September 2025 to February 2026 (Doc. 21, p. 9). He alleges that he faced more retaliation. Jail nurse Gerry Poole allegedly packaged the incorrect doses of Stanton's medication on numerous occasions (*Id.*). On some occasions, he received a triple dose of his blood pressure medication. As a result of Poole's actions, Stanton suffered from seizures and gastrointestinal bleeding (*Id.*). He requested medical care, informing officials that he was pooping blood, but his requests were ignored (*Id.*). Captain Hall informed Stanton that she would not obtain medical care for him unless she saw his rectal bleeding, and Stanton was placed in a holding cell to defecate for inspection. He remained in the cell for six hours in his own waste (*Id.*). Unknown correctional officers who distributed the medication on a daily basis saw that the doses were incorrect but did nothing to remedy

5

the situation (*Id.*). After Stanton suffered from a seizure, he was placed, unconscious, in a holding cell (*Id.*).

At some unknown point, Captain Hall allegedly cut off Stanton's communication for thirty days (Doc. 21, p. 9). Stanton alleges this was done to prevent him from filing a timely appeal in his criminal case. As a result, Stanton alleges he was denied access to the courts. Just prior to his release in February 2026, jail staff administered Suboxone (*Id.* at p. 10). Stanton alleges that he was not previously prescribed this medication. Stanton was released on February 5, 2026, and he went to the emergency room where narcotics were found in his system (*Id.*). Stanton alleges that Dinn and Cockrum tried to use this incident as a basis to revoke Stanton's bond. The attempt failed. Jane Doe Jill from Pretrial Services then claimed that Stanton missed a drug test, in another attempt to revoke his bond. Because of their actions, Stanton alleges he is currently on restrictive conditions including GPS monitoring and home confinement (*Id.*).

## Discussion

Based on the allegations in the Second Amended Complaint, the Court designates the following counts:

**Count 1:** **Fourth Amendment unreasonable search and seizure claim against Easter and Payne for initiating a pretextual traffic stop, conducting an illegal search of Stanton's vehicle, seizing his personal items, and searching Stanton's home on a defective warrant.**

**Count 2:** **First Amendment retaliation claim against Easter for conducting and directing a multi-year campaign of harassment, searches, and arrests in retaliation for Stanton obtaining an attorney in 2023.**

| Count 3: | Fourth Amendment malicious prosecution claim against Dinn, Cockrum, and Hall for pursuing the drug trafficking charge against Stanton on a fraudulent basis and committing perjury regarding the February 2, 2023 stop and search. |
|---|---|
| Count 4: | Fourteenth Amendment due process claim against Easter, Dinn, and Cockrum for confiscating Stanton's $840.00 without due process of law. |
| Count 5: | Conspiracy claim against Easter, Dinn, Cockrum, Hall, Payne, Jane Doe Jill, Officer Michelle, and John Doe Officer for fabricating criminal charges against Stanton, destroying evidence, making pretextual traffic stops, and falsifying evidence. |
| Count 6: | *Monell* claim against Sheriff Kyle Bacon (official capacity) for maintaining and sanctioning a custom or policy of pretextual K9 alerts to justify illegal searches of vehicles. |
| Count 7: | Fourteenth amendment medical claim against Gerri Poole, Captain Hall, and John and Jane Doe Correctional Officers for providing Stanton with the wrong dosage of his medications and failing to provide him with medical care for his medical conditions. |
| Count 8: | First and/or Fourteenth Amendment access to courts claim against Captain Hall for depriving Stanton of all forms of communication for 30 days. |

The parties and the Court will use these designations in all future pleadings and orders,

unless otherwise directed by a judicial officer of this Court. **Any other claim that is**

**mentioned in the Second Amended Complaint but not addressed in this Order should**

**be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

*Count 1*

The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness," which is "measured in objective terms by examining the totality of the circumstances." *United States v. Yang*, 39 F.4th 893, 899 (7th Cir. 2022), *cert. denied*, --- U.S. ----, 143 S. Ct. 754, 214 L.Ed.2d. 454 (2023) (quoting *United States v. Price*, 28 F.4th 739, 748 (7th Cir. 2022), and *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc)). For a traffic stop, the stop must be based on "a reasonable articulable suspicion that [the individual] had committed, were committing, or were about to commit an offense. *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). *See also United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007) (investigatory stop requires reasonable suspicion which is "less than probable cause but more than a hunch.").

Here, Stanton alleges that Easter and Payne initiated the traffic stop as a pretext to search the car; he alleges that they lacked any reasonable suspicion or probable cause (Doc. 21, pp. 4, 10). He notes that he had just left his home, and the vehicle was immediately pulled over. He further alleges that the car was searched, and although no

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

contraband was located, his personal items were still seized. Construing the facts in the light most favorable to Stanton, he adequately alleges that the stop and search of his vehicle lacked reasonable suspicion and probable cause.[2]

But as to the search of his home, Stanton fails to state a claim. Stanton alleges that after the traffic stop, the officers drove to his home and conducted a search of the premises. He acknowledges that the officers had a warrant for the search of the home but alleges that the warrant was defective because it included only an address and lacked his name.

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The particularity requirement "limits 'the authorization to search to the specific areas and things for which there is probable cause to search,' and in doing so 'ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'" *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (quoting *Maryland v. Garrison,* 480 U.S. 79, 84 (1987)). The requirement is satisfied if "the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United*

---

[2] As the Court previously noted in dismissing Stanton's original pleading, Stanton's claims stemming from the 2023 stop and search may well be barred by the statute of limitations, which in Illinois is two years. *Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019). Stanton alleges, however, that his claims were tolled because the nature and extent of the violations were fraudulently concealed from him. At this early stage, the Court will allow the claim to proceed until the record can be fully developed as to the timeliness of his lawsuit.

*States,* 267 U.S. 498, 503 (1925). Minor defects and omissions in the warrant do not invalidate the warrant if "there is no danger that the officers might inadvertently search the wrong place." *United States v. Kelly*, 772 F.3d 1072, 1081 (7th Cir. 2014). *See also McMillian*, 786 F.3d at 640 (collecting cases). Stanton contends that the warrant included his address but lacked his name. But there are no allegations to suggest that the warrant was so defective that the officers could not reasonably identify the place to be searched. *See Jones v. Wilhelm*, 425 F.3d 455, 462-63 (7th Cir. 2005) (warrant for home was valid when issued despite lacking name of occupants and specific apartment number, but invalid as executed because officer knew of ambiguity in the number of apartments on the level to be searched). The warrant included the correct address, and Stanton acknowledged that Easter drove him to his home where they entered the house pursuant to the warrant. Officers clearly knew the home identified in the warrant. Nothing in the Complaint suggests that the warrant was invalid. Further, there are no allegations to suggest that any other errors invalidated the warrant, nor does Stanton allege that the warrant lacked probable cause. Thus, Count 1 is **DISMISSED** as to the search of Stanton's home.

*Count 2*

In order to state a viable retaliation claim in Count 2, Stanton must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Stanton alleges that Easter retaliated against him after Stanton secured an attorney to represent

10

him. Stanton claims that the invocation of his Sixth Amendment right to counsel led Easter to threaten him and then conduct a multi-year campaign of arrests, retaliation, and criminal charges.

The Court assumes, at this stage, that obtaining counsel for a criminal case constitutes protected conduct. *Friedl v. City of New York*, 210 F.3d 79, 85 (2nd Cir. 2000) (an individual states a Section 1983 retaliation claim when "the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution"); *Williams v. Mitchell*, 122 F.4th 85, 89 (4th Cir. 2024) (individual stated a First Amendment retaliation claim under Section 1983 when officers retaliated against him for exercising his Sixth Amendment right by demanding to go to trial on the charges against him). Stanton further alleges that he suffered a deprivation by being subjected to stops, searches, and arrests over the course of two years (Doc. 21, p. 8). Stanton also alleges that the actions were in response to his decision to invoke his right to counsel because numerous officers told him that he was being stopped, searched, and/or arrested because he messed with the task force. Stanton notes that when Easter arrested him on September 9, 2025, Easter noted that he kept his word to get back at Stanton for messing with the task force. At this stage, Stanton states a viable retaliation claim against Easter.

*Count 3*

Stanton alleges that the two State's attorneys and Officer Hall initiated and continued with the criminal prosecution against him without evidence and have based their allegations on fraud. He alleges that Hall perjured himself when he testified falsely as to the stop and search.

In order to allege a malicious prosecution claim under 42 U.S.C. § 1983, Stanton must allege that the "criminal prosecution (1) was instituted without probable cause; (2) for a malicious motive — a purpose other than bringing the defendant to justice; and (3) ended without a conviction." *Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024) (quoting *Thompson v. Clark*, 596 U.S. 36, 44, 49 (2022)). The Court notes that Stanton's case has not ended without a conviction; in fact, it is still ongoing. *McDonough v. Smith*, 588 U.S. 109, 117-18 (2019) (claim for malicious prosecution and false evidence does not accrue until the underlying criminal proceedings are resolved). Thus, Stanton's malicious prosecution claim against Dinn, Cockrum, and Hall fails to state a claim.

Stanton's claim also fails because he sues the State's attorneys and the officer who testified at his preliminary hearing, both of which are immune from suit under Section 1983. "Prosecutors are absolutely immune from liability for damages under [Section] 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016) (citations omitted). Here, Stanton alleges that the two State's attorneys presented a fabricated narrative to the court, elicited false testimony from Hall during a preliminary hearing, and orchestrated a "bond swap" to hold Stanton on the charges. All of these actions were taken in furtherance of their prosecutorial duties. The decision to indict and continue to pursue a case are protected by absolute immunity. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). Presenting evidence to the court in furtherance of a prosecution, even if the evidence is allegedly

12

fabricated is also protected by absolute immunity. *Id.* at 512 ("If a prosecutor plants

evidence before someone is arrested, he enjoys only qualified immunity…. Yet, for that

same fabrication of evidence, if he commits the act during a judicial proceeding, he

receives absolute immunity."). Hall is also protected by absolute immunity for his

testimony at the hearing. *See also Kincaid v. Eberle*, 712 F.2d 1023, 1023-24 (7th Cir. 1983)

(extending immunity to testimony in pretrial proceedings); *Curtis v. Bembenek*, 48 F.3d

281, 284-85 (7th Cir. 1995) (absolute immunity for preliminary hearing testimony). Thus,

Count 3 is **DISMISSED with prejudice**.

*Count 4*

To the extent that Stanton alleges that State's attorneys Dinn and Cockrum denied

him due process by "fabricating an official court record of a forfeiture hearing," the two

attorneys are entitled to absolute immunity. As to his claim against Easter, Stanton alleges

that he was not afforded due process because the procedures under Illinois's forfeiture

act were not properly followed. But as the Court stated in dismissing his original

pleading, an individual cannot maintain a claim if the state provides an adequate post-

deprivation remedy. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Hudson v.

Palmer*, 468 U.S. 517, 530–36 (1984) (where the state provides an adequate remedy,

plaintiff has no civil rights claim). The Seventh Circuit has found that Illinois provides an

adequate post-deprivation remedy for those who did not receive notice of forfeiture

through a motion to vacate the forfeiture. *Robinson v. Winslow*, 88 F. App'x 93, 95-96 (7th

Cir. 2004) (collecting cases). Thus, Stanton has an avenue to challenge the forfeiture of his

funds, and his claim in this case is **DISMISSED**.

13

*Count 5*

Stanton alleges that numerous officials conspired with Easter to retaliate against him by fabricating a drug trafficking case against him. In furtherance of the conspiracy they allegedly conducted pretextual stops, destroyed evidence, improperly charged him, conducted additional arrests, and manufactured bond violations. Under Section 1983, "the function of [the] conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). *See also Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy is not an independent basis of liability in Section 1983 actions). "To establish conspiracy liability in a [Section] 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). At the pleading stage, a plaintiff must allege "the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007)

At this early stage, Stanton states a claim for conspiracy to retaliate against Easter, Hall, Payne, Officer Michelle, and John Doe Officer Zeigler Police Department. He alleges that Officer Michelle and John Doe Officer arrested him on May 23, 2023, repeating the phrase Easter had initially invoked, stating that Stanton messed with the task force and now the task force would mess with him (Doc. 21, p. 7). Stanton alleges that Hall conducted numerous stops of his vehicle and arrested him in June 2024. He further

14

alleges that Easter arrested him a second time, after conducting a pretextual stop and K9 search (*Id*. at p. 8). Stanton alleges these actions were taken in retaliation for his invocation of his Sixth Amendment rights and refusal to participate as an informant.

But Stanton fails to state a claim against Dinn, Cockrum, and Jane Doe Jill from Pretrial Services. Stanton alleges that Dinn and Cockrum participated in the conspiracy to retaliate by prosecuting the criminal cases against Stanton and conducting a "bond swap" related to his two charges in an attempt to detain him. As previously stated, however, Dinn and Cockrum are entitled to absolute immunity for the actions taken during the course of prosecuting the claims against Stanton. As to Jane Doe, Stanton alleges that she fabricated a report regarding his drug test, but there are no allegations to suggest that she was in agreement with the other conspirators or even aware of the conspiracy. Stanton merely alleges in conclusory fashion that the bond violation was part of the "ongoing conspiracy." (Doc. 21, p. 10). The statement is not enough to state a claim against Jane Doe.

*Count 6*

Stanton alleges that as part of the conspiracy to retaliate against him, numerous officers, both known and unknown, subjected him to at least five pretextual traffic stops. He alleges that on each occasion, the officers would stop him, claim that a K9 alerted, and search the vehicle (Doc. 21, p. 8). He alleges that these stops were done under the authority of Sheriff Kyle Bacon (*Id*.). Notably, Stanton does not allege that Bacon was part of the retaliation conspiracy. Instead, he alleges that Bacon, acting in his official capacity as sheriff, implemented a policy or sanctioned a widespread practice or custom of

15

utilizing K9 alerts to create probable cause for a search of vehicles, including Stanton's. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022) ("Municipal action giving rise to [Section] 1983 liability may take the form of: (1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policymaking authority."). In order to be liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the "policies must be the *moving* force behind the constitutional violations." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010) (citing *Woodward v. Correctional Medical Services of Illinois, Inc.,* 368 F.3d 917, 927 (7th Cir. 2004)).

But Stanton fails to allege that the widespread practice of utilizing K9 alerts to justify a search of a vehicle was a moving force behind the retaliatory efforts by various members of the task force. He provides very few factual allegations surrounding these searches. Other than alleging that they were retaliatory, he fails to allege how these K9 initiated searches violated his rights, nor does he indicate how each K9 alert was "pretextual." He simply fails to provide enough factual allegations regarding these stops to suggest that his rights were violated by the stops themselves or that a custom or policy was behind any violation he currently alleges. Thus, Count 6 is **DISMISSED without prejudice** for failure to state a claim.

### *Severance of Counts 7 and 8*

Stanton's claims in Counts 7 and 8 are distinctly different from those claims in his earlier counts and involve different defendants. As such, the Court must determine whether the claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rules of Civil Procedure 20 prohibits a

16

plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607. Rule 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Stanton's claims regarding his medical care and access to communications while a pretrial detainee at the Franklin County Jail involve different factual allegations, defendants, and legal theories from the claims in Counts 1-6 regarding the stops, searches, and seizures by members of the task force. In an apparent attempt to tie these claims to his claims against the task force, Stanton mentions that the actions of Gerry Poole and others were part of the "retaliation" he experienced. But there are no allegations to suggest that any of the other defendants were involved in his medical care at the jail, nor is there any evidence that any of the other defendants were personally involved in denying Stanton access to communications at the jail. Because these claims are distinct and different than the claims regarding the criminal charges against him, the Court **SEVERS** Counts 7 and 8 into a new case.

### Motion for Injunctive Relief

In addition to his Amended Complaint, Stanton filed a motion for temporary restraining order and preliminary injunction (Doc. 20). He subsequently filed a brief in

17

support of his motion (Doc. 22) and an affidavit (Doc. 23). He requests that the Court

intervene and stop his prosecution (Doc. 22, p. 6). He asks that the Franklin County State's

Attorney's Office be enjoined from filing a motion to revoke his bond based on a prior

drug test, that pretrial services be enjoined from manufacturing reports regarding his

compliance, and that all involved agencies be enjoined from contacting, surveilling, or

"harassing" Stanton. This is Stanton's second motion for injunctive relief. The Court

previously denied his motion for injunctive relief under the *Younger* abstention doctrine.

"[F]ederal courts are required by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27

L.Ed.2d 669 (1971), to abstain from taking jurisdiction over federal constitutional claims

that involve or call into question ongoing state proceedings." *Tobey v. Chibucos*, 890 F.3d

634, 651 (7th Cir. 2018). Stanton's motion presents a classic *Younger* abstention scenario.

He asks the Court to pause a pending state court criminal case and interfere with bond

decisions. There are, however, three exceptions to the *Younger* abstention that can require

federal intervention: where "(1) the state proceeding is motivated by a desire to harass or

is conducted in bad faith, (2) there is an extraordinarily pressing need for immediate

equitable relief, or (3) the challenged provision is flagrantly and patently violative of

express constitutional prohibitions." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 664 (7th

Cir. 2007) (quoting *Jacobson v. Village of Northbrook Mun. Corp.* 824 F.2d 567, 569–70 (7th

Cir.1987)). The exceptions are meant to be narrow. *Mulholland v. Marion Cnty. Election Bd.*,

746 F.3d 811, 818 (7th Cir. 2014)

Stanton argues that the first exception is applicable to this case. He argues that he

has been subjected to a coordinated campaign of harassment. He alleges that his current

18

criminal proceedings are a direct result of retaliation by Easter and other officials, and he faces the imminent threat of re-incarceration with recent threats to his bond.

To support his claim of bad faith, Stanton points to the transcript from his preliminary hearing, as well as the warrant for the search of his home, and records for the February 2 stop. In regard to his preliminary hearing, he notes that the presiding judge found no probable cause for four of the five felony charges (Doc. 22, p. 5). But the attached transcript demonstrates that the state court found there was probable cause that a felony offense was committed (Doc. 22-2, p. 9). Although the presiding judge noted that some of the counts seemed to lack probable cause, he was not required to go charge by charge, and he found probable cause as to one count (*Id.*). There is also no indication that the judge dismissed those charges or found them to be based on a fraudulent narrative as Stanton alleges. That the State is still proceeding on the charges does not evidence bad faith. And Stanton has the ability to seek the dismissal of those charges in his pending criminal case.[3] The continued prosecution of his criminal cases does not constitute bad faith. *See Harris v. Ruthenberg*, 62 F. Supp.3d 793, 800 (N.D. Ill. 2014) ("The mere continuation of the case… does not constitute harassment, let alone harassment for *Younger* purposes. If it did, the federal court would have to intervene in every ongoing criminal prosecution.").

---

[3] In fact, a review of the dockets of Stanton's two criminal cases in Franklin County reveals that he has filed motions to dismiss the cases, as well as several motions regarding the admissibility of evidence. He is also currently represented by counsel in both cases.

The Court also notes that Stanton's original motion for injunctive relief focused on his fear that his bond would be revoked, but he acknowledges in this new motion that he ended up receiving GPS monitoring and home confinement (Doc. 20, p. 4). It appears that Stanton has received some favorable rulings from the state court, suggesting that the case is not proceeding in bad faith. And he currently has motions pending to dismiss the cases, as well as motions regarding the admissibility of certain evidence. *People v. Stanton*, Case No. 2025CF309 (Ill. Cir. Ct. filed Sept. 10, 2025); *People v. Stanton*, Case No. 2023CF210 (Ill. Cir. Ct. filed May 23, 2023).

Finally, records regarding the search warrant and traffic stops seem to refute Stanton's claims that they lacked probable cause and/or reasonable suspicion. The written warning Stanton's girlfriend received from the traffic stop by Trooper Payne on February 2, 2023, notes that the car was pulled over for disobeying a stop sign (Doc. 22-7, p. 1). Documents filed in one of his cases note that a confidential source purchased methamphetamine from Stanton at his home, indicating probable cause for the search warrant (Doc. 22-4, p. 1). Stanton's exhibits call into question his claim that the searches were baseless and that subsequent legal proceedings and stops were harassment.

Although Stanton's pleading alleges harassment and bad faith, his motion and attached exhibits call those allegations into question and demonstrate that he has an opportunity to present arguments regarding the legality of the stops and searches during the course of his state court cases. Thus, the Court finds that the alleged bad faith and harassment do not justify an exception to abstention in this case. Because abstention is appropriate in this case, Stanton's request for injunctive relief is **DENIED**.

## Disposition

For the reasons stated above, Count 7 against Gerri Poole, Captain Hall, and John and Jane Doe Correctional Officers and Count 8 against Captain Hall are **SEVERED** into a new case. The Clerk of Court is **DIRECTED** to file the following documents in the new case:

- This Memorandum and Order;

- The Amended Complaint (Doc. 21); and

- Stanton's motion for leave to proceed *in forma pauperis* (Doc. 2).

As to the remaining claims in this case, Count 1 shall proceed against Officer Easter and Trooper Payne. Count 2 shall proceed against Easter. Count 5 shall proceed against Easter, Payne, Tim Hall, Officer Michelle, and John Doe Officer Zeigler Police Department. Count 3 is **DISMISSED with prejudice**. Count 4 is **DISMISSED with prejudice**. Count 6 is **DISMISSED without prejudice**.

The Court finds that a stay is warranted pursuant to the *Younger* abstention doctrine. The stay is premised on the finding that the challenged conduct is connected with criminal charges in two criminal cases that are still ongoing. Nonetheless, the Court finds it convenient to go ahead and serve the identified defendants in this case. The stay shall go into effect after Defendants Easter, Trooper Payne, Tim Hall, Officer Michelle have been served and counsel has entered their appearance on their behalf. The Defendants shall **NOT** be required to answer the Complaint at this time. Upon lifting the stay, the Court shall enter a scheduling order including the time allowed for Defendants to file Answers.

21

The Clerk of Court shall prepare for Officer Easter, Illinois State Trooper Payne, Tim Hall, and Officer Michelle (Christopher Police Department): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Stanton. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Stanton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

If judgment is rendered against Stanton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Stanton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:  April 13, 2026**

                                      **NANCY J. ROSENSTENGEL**
                                      **United States District Judge**